**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DANA D. WILSON et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. CIV-23-847-G** |
| **RESERVE NATIONAL INSURANCE COMPANY,** | ) | |
| **Defendant.** | ) | |

# ORDER

Now before the Court is a Motion to Remand (Doc. No. 9) filed by Plaintiffs Dana D. Wilson and Shyanne L. Wilson. Defendant Reserve National Insurance Company ("Reserve") has filed a Response (Doc. No. 10), to which Plaintiffs have replied (Doc. No. 11).

*I. Plaintiffs' Allegations*

Plaintiffs, who are husband and wife, originally filed this lawsuit in the District Court of Kay County, Oklahoma, bringing claims under Oklahoma law against Reserve and against an additional defendant, Renae L. Ehler. *See* Pet. (Doc. No. 1-3).

Plaintiffs allege that on or around July 18, 2019, Ms. Wilson purchased a group critical illness policy (the "Policy") from Reserve through Reserve's agent, Ms. Ehler. *See id.* ¶¶ 5, 26-28. Both Plaintiffs were covered under the Policy and made all required premium payments on the Policy. *Id.* ¶¶ 6, 8. The Policy provided a $25,000 supplemental cash benefit in the event of specified illness including an acute heart attack. *Id.* ¶ 16.

At that time of purchase, Ms. Wilson discussed Mr. Wilson's health history with Ms. Ehler, and Ms. Ehler "assured [Ms. Wilson] that [Ms. Wilson] could add her husband, irrespective of his age or history of high blood pressure, . . . and that it would never affect her coverage in any way because the benefits of the policy were a 'guaranteed payout'" at the $25,000 level. *Id.* ¶ 27. Ms. Ehler failed to disclose to Ms. Wilson "anything about the preexisting condition limitation of the policy that might be applied to a specified illness claim." *Id.* Ms. Wilson agreed to pay the monthly premiums in reliance upon this promise of a "guaranteed payout." *Id.*

Reserve knowingly "issues this policy coverage at this level without any regard to an insured's prior health history," "and the product is marketed by [Reserve's] agents promising this $25,000 supplemental cash benefit is a 'guaranteed payout' upon diagnosis of the specified illness." *Id.* ¶ 17. Plaintiffs allege that Reserve and Ms. Ehler intentionally marketed the Policy in this fashion, routinely ignoring what is promised in connection with the sale. *See id.* ¶ 28. Further, Reserve "makes overly broad denials in contravention of its marketing statements" and "takes no action to monitor, track," or "correct" such statements by its agents. *Id.* ¶¶ 21, 28.

In July of 2020, Mr. Wilson had "a covered heart attack" and timely made a claim for benefits under the Policy. *Id.* ¶ 9. Reserve unjustifiably denied Plaintiffs' claim and "ignored and refused Plaintiffs' attempt to appeal said denial." *Id.* ¶¶ 10-11. In denying the claim, Reserve intentionally misstated the terms of the Policy by stating that the Policy does not pay critical illness benefits associated with preexisting conditions and that a diagnosis of high blood pressure is a preexisting condition for a heart attack. *Id.* ¶ 19.

Rather, the Policy includes a preexisting condition limitation "that only limits coverage if the heart attack occurred due to a preexisting condition." *Id.* ¶ 20. The medical documentation and records, as well as the letters from Mr. Wilson's treating physicians, verify the lack of any preexisting-condition causation as to Mr. Wilson's heart attack. *Id.* ¶¶ 22.

Ms. Ehler participated in the handling of this claim, "by and for Reserve," and "specifically reiterated that the $25,000 cash benefit should be promptly paid without regard to Mr. Wilson's health." *Id.* ¶ 13. "Ms. Ehler also indicated the appropriate benefits would be paid because, at that [$25,000] level, any investigation with regard to Mr. Wilson's prior health was not relevant to the payment of his supplemental cash benefit." *Id.*

Upon Plaintiffs' information and belief, Reserve routinely denies claims made under the Policy without any adequate investigation or regard to the policy language and denied Mr. Wilson's claim with "inadequate investigation" and "improper evaluation." *Id.* ¶ 21. As to the Plaintiffs' appeal, Reserve "refused to appropriately and fully investigate, properly evaluate," "or reconsider proper payment." *Id.* ¶ 23.

*II. Procedural Background*

Plaintiffs first sought relief on these allegations in October of 2021, when they filed suit against Reserve in state court. *See* Pls.' Mot. to Remand Ex. 6 (Doc. No. 9-6) (petition filed Oct. 6, 2021). Reserve removed that case to this Court on the basis of both diversity and federal-question jurisdiction, and Plaintiffs voluntarily dismissed their claims on November 8, 2021. *See Wilson v. Rsrv. Nat'l Ins. Co.*, No. CIV-21-1070-G (W.D. Okla.).

In the instant Petition, filed in state court on November 9, 2021, Plaintiffs raise claims against Reserve for breach of contract and breach of the duty of good faith and fair dealing under Oklahoma law. *See* Pet. ¶¶ 9-25. Against both Reserve and Ms. Ehler, Plaintiffs bring claims for "false representation, concealment, and deceit" under Oklahoma law. *Id.* ¶¶ 26-36.

Both defendants filed answers to the Petition, and the parties commenced pretrial discovery and proceedings in the trial court. *See* Notice of Removal Ex. 5, State-Ct. Docket Sheet (Doc. No. 1-5). On August 23, 2023, Plaintiffs filed a Dismissal Without Prejudice, which dismissed (1) all claims against Ms. Ehler and (2) the breach of contract claim against Reserve. *See* Notice of Removal Ex. 4, Pls.' Dismissal Without Prejudice (Doc. No. 1-4).

On September 22, 2023, Reserve—the sole remaining defendant—removed the case to this Court on the basis of diversity jurisdiction, citing its own non-Oklahoma incorporation and the allegedly fraudulent joinder of Ms. Ehler, as well as the alleged "bad faith" of Plaintiffs in engaging in such joinder. *See* Notice of Removal (Doc. No. 1) at 1; 28 U.S.C. §§ 1332, 1441, 1446(b)(3), (c)(1).[1] Plaintiffs then filed their Motion to Remand.

*III. Whether Reserve Has Met Its Burden to Prove Diversity Jurisdiction*

A defendant may remove a case pending in state court to federal court if the case is one over "which the district courts of the United States have original jurisdiction." 28

[1] The doctrine of fraudulent joinder permits a federal court to disregard the citizenship of a nondiverse defendant against whom the plaintiff has not asserted or cannot assert a colorable claim for relief. *See Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013).

U.S.C. § 1441(a). "Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." *Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991). "Removal statutes are to be strictly construed, and all doubts are to be resolved against removal." *Fajen v. Found. Res. Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982) (citation omitted).

*A. Complete Diversity Among the Parties*

The relevant statute prescribes that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Jurisdiction under § 1332(a) requires complete diversity among the parties—i.e., the citizenship of all defendants must be different from the citizenship of all plaintiffs. *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008).

It is undisputed that the amount in controversy requirement is met and that Plaintiffs are citizens of Oklahoma for diversity purposes. *See* Pet. ¶¶ 1, 4. Plaintiffs initially contended that Reserve is incorporated in and a citizen of Oklahoma for diversity purposes. *See id.* ¶ 2; Pls.' Mot. to Remand at 22. Reserve, however, has supplied the Court with documentation reflecting that Reserve is currently incorporated in and has its principal place of business in Illinois. *See* Def.'s Resp. Ex. 4 (Doc. No. 10-4); Def.'s Am. Discl. (Doc. No. 13). Accordingly, Reserve has sufficiently established that it is a citizen of Illinois and that complete diversity exists between the parties. *See* 28 U.S.C. § 1332(a)(1), (c)(1).

*B. The Timeliness of Removal*

As noted, this case was removed on September 22, 2023—nearly two years after its initiation via the filing of the Petition on November 9, 2021. Reserve argues that the removal was timely pursuant to 28 U.S.C. § 1446(b)(3), which prescribes:

> "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3); *see* Notice of Removal at 4. According to Reserve, the August 23, 2023 Dismissal Without Prejudice, through which Plaintiffs voluntarily dismissed all claims against the nondiverse defendant Ms. Ehler, constituted an "other paper" from which Reserve first ascertained that the case was or had become removable. 28 U.S.C. § 1446(b)(3).

The § 1446(b)(3) 30-day "other paper" deadline is subject to an additional limitation in diversity actions.

> A case may not be removed under subsection (b)(3) on the basis of [diversity] jurisdiction . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

*Id.* § 1446(c)(1); *see also Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435, 438 (2019) ("[W]hen federal jurisdiction is based on diversity jurisdiction, the case generally must be removed within 1 year after commencement of the action." (internal quotation marks omitted)). Reserve contends its removal is not defeated by application of the statutory one-

year limit because Plaintiffs "acted in bad faith" by bringing claims against Ms. Ehler at the outset of the case. 28 U.S.C. § 1446(c)(1); *see* Notice of Removal at 4-6.

For the reasons set forth below, the Court finds Reserve's arguments to be without merit.

With regard to the applicability of § 1446(b)(3), Reserve asserts that Plaintiffs identified Ms. Ehler as a defendant in November of 2021 solely to defeat diversity and prevent removal but this improper joinder was not apparent to Reserve until Plaintiffs' Dismissal Without Prejudice was filed in August of 2023. As Plaintiffs correctly note, if Reserve considered Ms. Ehler to be fraudulently joined—i.e., that there was no colorable claim asserted against Ms. Ehler—Reserve could have removed the case on that basis when it was initially filed. *See* Pls.' Mot. to Remand at 11. Reserve's Response fails to show otherwise or to establish that the state-court Dismissal Without Prejudice properly serves as an "other paper" allowing Reserve to remove this case under the auspices of 28 U.S.C. § 1446(b)(3).

Moreover, even if the case was otherwise subject to removal under § 1446(b)(3), the Court rejects Reserve's invitation to find that Plaintiffs acted in bad faith so as to permit removal more than one year beyond the commencement of the action. This Court and others follow the analysis prescribed in *Aguayo v. AMCO Insurance Co.*, 59 F. Supp. 3d 1225 (D.N.M. 2014), in considering the "bad faith" exception to § 1446(c)(1)'s one-year

time limit on removal. *Holman v. Coventry Health & Life Ins. Co.*, No. CIV-17-886-HE, 2017 WL 5514177, at *2 (W.D. Okla. Nov. 17, 2017) (citing cases).

> First, the court determines whether the plaintiff actively litigated against the non-diverse defendant in state court. If plaintiff shows there was active litigation against that defendant, a presumption of good faith arises. That leads to step two, in which the question becomes whether the defendant has shown, from all the evidence and despite the active litigation, that the plaintiff's real reason for keeping the non-diverse defendant in the case past the one-year deadline was the desire to keep the case in state court.

*Id.* (citations omitted); *accord Rowan v. State Farm Fire & Cas. Co.*, No. CIV-19-205-PRW, 2019 WL 4166697, at *5 (W.D. Okla. Sept. 3, 2019).

As to the first step, Plaintiffs have established that they actively litigated their case against Ms. Ehler. For example, Plaintiffs served written discovery upon Ms. Ehler and took her deposition, and they participated in a mediation with both defendants. Pls.' Mot. to Remand at 10; *see also* State-Ct. Docket Sheet at 4; *Rowan*, 2019 WL 4166697, at *5 (citing "asserting valid claims, taking discovery" and "negotiating settlement" as reflecting "active[] litigat[ion] against the removal spoiler" (internal quotation marks omitted)). As summarized above, Plaintiffs' Petition set forth detailed factual allegations that implicated Ms. Ehler in the fraud and deceit claims. And Reserve's argument that Plaintiffs' claims were a complete sham and obviously time-barred is undermined by the fact that Ms. Ehler, represented by counsel, did not seek dismissal or pretrial judgment in any form but instead filed an answer and was defending herself in the litigation. *See* State-Ct. Docket Sheet at 3-4.

As to the second step, to rebut the presumption of good faith, Reserve "must present strong, relatively compelling evidence, direct or circumstantial, of [Plaintiffs'] subjective

intent." *Holman*, 2017 WL 5514177, at *2. Reserve fails to do so. The Court will not premise a finding of bad faith solely upon Plaintiffs' pleading strategy, as Reserve suggests. *See* Def.'s Resp. at 15-16 (arguing that Plaintiffs sued Ms. Ehler "to thwart [Reserve's] ability to resort to a federal forum"); *cf. Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) ("In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder necessary parties." (alteration and internal quotation marks omitted)). Although Reserve labels the timing of Plaintiffs' dismissal of their claims against Ms. Ehler—as well as one claim against Reserve—as "suspicious," Reserve "has nothing to prove that [the] dismissal," which came as the case was approaching a December 2023 pretrial conference, "was anything other than what [Plaintiffs] say[] it was: a matter of trial strategy in deciding which claims to focus on at trial." Def.'s Resp. at 6; *Graham v. CSAA Fire & Cas. Ins. Co.*, No. CIV-19-793-PRW, 2020 WL 1699554, at *2 (W.D. Okla. Apr. 8, 2020); *see also Holman*, 2017 WL 5514177, at *3 ("[A] party or its counsel should not be expected to make a decision as to dismissal of another party without a relatively certain knowledge and confirmation of the pertinent facts or positions.").

There being no showing of "bad faith," the removal of this diversity action is untimely under 28 U.S.C. § 1446(c)(1), and remand is appropriate. *See Graham*, 2020 WL 1699554, at *2; *Holman*, 2017 WL 5514177, at *3.

*IV. Plaintiffs' Request for Expenses and Costs*

Plaintiffs seek an award of the fees and costs incurred in seeking remand. *See* Pls.' Mot. to Remand at 22-24. "An order remanding the case may require payment of just costs

and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "While an award of fees is within the discretion of the Court, 'absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.'" *Graham*, 2020 WL 1699554, at *2 (alteration and footnote omitted) (quoting *Martin v. Franklin Cap. Co.*, 546 U.S. 132, 141 (2005)).

Having considered the relevant record, the Court concludes that an award of fees and costs to Plaintiffs is justified. Plaintiffs' voluntary dismissal of certain of their claims did not provide Reserve with "an objectively reasonable basis to conclude that it was appropriate to remove the case," nearly two years after its commencement and "on the eve of trial." *Id.*

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Remand (Doc. No. 9) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' request for "just costs and any actual expenses, including attorney fees, incurred as a result of the removal" is granted. 28 U.S.C. § 1447(c). If the parties cannot agree on an amount within 14 days, Plaintiffs may submit a motion to the Court.

The Court REMANDS this matter to the District Court of Kay County, Oklahoma, and DIRECTS the Clerk of this Court to send a certified copy of this Order to the Clerk of the state court to which this matter is remanded.

IT IS SO ORDERED this 28th day of August, 2024.

Charles B. Goodwin

CHARLES B. GOODWIN
United States District Judge